*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DUSTIN ROWLAND,

        Plaintiff/Counter-Defendant-Appellee,

v

CITY OF DETROIT,

        Defendant/Counter-Plaintiff-Appellant,

and

JOHNNY PHELI GREEN,

        Defendant-Appellant.

FOR PUBLICATION
September 12, 2025
2:57 PM

No. 372120
Wayne Circuit Court
LC No. 24-003731-NI

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

ACKERMAN, P.J.

It is well established that when a genuine issue of material fact exists, the trial court must submit the case to a factfinder. It is also often remarked that a trial court may grant summary disposition and avoid submission to a factfinder when no such issue exists. In this case, we emphasize an important corollary: When there is no genuine issue of material fact, it is the trial court's *obligation* under MCR 2.116(I)(1) to grant summary disposition to the prevailing party.

Here, the dispositive evidence is not contested testimony or disputed inferences—it is a multi-angle video that both sides agree is a complete account of the accident. The footage incontrovertibly shows plaintiff opening his driver-side door directly into traffic, causing it to collide with the municipal defendant's bus, which was traveling in its lane at the moment of impact. Under these undisputed facts, no reasonable juror could conclude that the bus driver was more at fault than plaintiff, as MCL 500.3135(2)(b) requires for plaintiff's claim to succeed. The trial court therefore erred in denying summary disposition, and we reverse.

-1-

## I.  FACTS

Just before 4:00 p.m. on March 18, 2022, plaintiff Dustin Rowland crossed US 12 in Detroit on foot to reach his parallel-parked vehicle.  As he did so, a bus owned by defendant City of Detroit and operated by co-defendant Johnny Green approached.  The bus was equipped with video cameras that captured the incident from several angles.  Plaintiff does not dispute the accuracy of the recording or suggest that it omits relevant facts.

The video shows plaintiff standing close to his vehicle as the bus neared, mostly outside the traffic lane but with his heels on the white boundary line.



*Figure 1: Plaintiff as the bus approached*

As the bus passed, plaintiff opened his driver-side door into traffic, and the bus struck it.  Plaintiff says he "sustained a crushing injury and severe lacerations to his left hand."



*Figure 2: The moment of impact*

In March 2024, plaintiff filed suit in Wayne Circuit Court, alleging counts of "Negligence," "Gross Negligence," and "Owner's Liability Against Defendant City of Detroit."[1] Along with its answer to the complaint, the City included a counterclaim for a "mini-tort" action under MCL 500.3135(3)(e) and a claim for property damage to the bus caused by plaintiff's negligence.

Defendants moved for summary disposition under MCR 2.116(C)(7) and (10) as to all counts. They also produced the video of the accident, and while discovery had not yet ended, defendants argued that the video was dispositive and further discovery would not affect the outcome of the case. Plaintiff responded that "the bus had veered off to the right and was driving on top of the right traffic line between the right traffic lane and the parking lane," and that it "proceeded directly toward [plaintiff] for several seconds without changing course or speed and was driving on top of the line at the time of impact," conduct he asserted was negligent.

The trial court denied the motion, reasoning as follows:

---

[1] This last count invoked MCL 257.401.

Generally claims regarding negligence involve questions that must be submitted to a jury as the trier of fact, because they require a subjective analysis of the reasonableness of a person's conduct, . . . and whether there is a causal connection between the conduct and a plaintiff's injuries.

To establish a prima facie case of negligence, Plaintiff must prove the four elements of a negligent prima facie case, which is a duty owed by Defendant to Plaintiff, breach of that duty, causation and damages.

. . . Plaintiff herein has sufficiently established the existence of a factual dispute. Plaintiff has sufficiently established a prima facia [sic] case of ordinary negligence. Plaintiff has also demonstrated the existence of a genuine issue of material fact with respect to whether his claim of negligence against Defendant may be successfully maintained under the motor vehicle exception to governmental immunity provided by MCL 691.1405.

An order denying summary disposition followed.[2] Defendants now appeal of right.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Defendants' motion invoked both MCR 2.116(C)(7) and (10). The requirements for such motions and procedures used in reviewing them are similar.

For a (C)(10) motion, "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required." MCR 2.116(G)(3)(b). A (C)(10) motion "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact," and assuming the required documentary support is provided, "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). It is, in other words, a burden-shifting system. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The material is viewed "in the light most favorable to the party opposing the motion." *Id*.

"Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material." *Maiden*, 461 Mich at 119. Further, in a (C)(7) motion "the contents of the complaint must be accepted as true unless specifically contradicted by the affidavits or other appropriate documentation submitted by the movant." *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994). Where documentary evidence *does* adequately contradict the complaint,

---

[2] The trial court also held that the City's counterclaim for property damage caused by plaintiff's negligence was precluded by the no-fault insurance law's general abolition of tort liability in MCL 500.3135(3), and that its request for summary disposition on its mini-tort counterclaim under MCL 500.3135(3)(e) was denied. Those rulings are not at issue in this appeal.

however, a court is to employ the same burden-shifting analysis as with a (C)(10) motion to determine whether the matter can go to trial. *Kincaid v Cardwell*, 300 Mich App 513, 537 n 6; 834 NW2d 122 (2013).

## III. ANALYSIS

As a general rule, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). But that immunity applies only "[e]xcept as otherwise provided in this act." *Id*. One such exception is the "motor vehicle exception," which provides that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any . . . employee of the governmental agency, of a motor vehicle of which the governmental agency is owner."[3] MCL 691.1405. Plaintiff contends that his claims against the City fall within this exception.

As to defendant Green, plaintiff invokes MCL 691.1407(2), which provides that "each . . . employee of a governmental agency . . . is immune from tort liability for an injury to a person . . . caused by the . . . employee . . . while in the course of employment" if certain requirements are met. The key condition is that the "employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage," which is known as the "gross negligence exception."[4] MCL 691.1407(2)(c). "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

Even when an exception to immunity applies, the no-fault act limits tort liability. See *Hardy v Oakland Co*, 461 Mich 561, 565; 607 NW2d 718 (2000) ("[T]he restrictions set forth in the no-fault act control the broad statement of liability found in the immunity statute."). As a result, plaintiff must still plead a case that satisfies the requirements of the no-fault insurance law, which generally abolishes "tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle." MCL 500.3135(3). The statute does preserve *some* auto-related torts, including liability for noneconomic losses caused when "the injured person has suffered . . . serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). Such claims are subject to comparative fault, but "damages must not be assessed in favor of a party who is more than 50% at fault." MCL 500.3135(2)(b).

To give rise to liability, a motorist's use of a vehicle must still be negligent (or, in the case of the claim against Green, *grossly* negligent). Courts have expressed the motorist's duty in terms similar to other negligence actions. "It is the motorist's duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *People v Pace*, 311 Mich App 1, 9; 874 NW2d 164 (2015) (cleaned up). When dealing with injuries to pedestrians, courts have offered additional commentary that has more specifically fleshed out what motorists and pedestrians can expect of each other. Under this

---

[3] See *Lockaby v Wayne Co*, 406 Mich 65, 75; 276 NW2d 1 (1979).

[4] See *Johnson v Wayne Co*, 213 Mich App 143, 160; 540 NW2d 66 (1995).

caselaw, the mere fact of an accident is not, in and of itself, proof of actionable negligence; a plaintiff must still identify actually negligent conduct to recover in tort.

Some judicial expressions of these duties emphasize what is owed by motorists to pedestrians. Plaintiff draws our attention to observations such as "[a] pedestrian may walk on any part of a public highway, and persons operating automobiles must use reasonable and ordinary care not to run down pedestrians upon such highways," *Pearce v Rodell*, 283 Mich 19, 34; 276 NW 883 (1937), or "it is negligence for the driver of a conveyance, having ample space to pass a pedestrian on a highway, to so guide his vehicle as to strike the latter in passing," *Schock v Cooling*, 175 Mich 313, 323; 141 NW 675 (1913). Plaintiff asserts that defendants were negligent under this authority.

Those general statements of a motorist's obligation toward pedestrians, however, are not dispositive.[5] Pedestrians owe duties as well. As the Supreme Court has explained:

> Under present-day traffic conditions a pedestrian, before crossing a street or highway, must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street or highway, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances. [*Malone v Vining*, 313 Mich 315, 321; 21 NW2d 144 (1946).]

Similarly, the Court has remarked that "[d]rivers must notice persons in the street, but need not watch others, unless they evidence intention to enter the street." *Braxton v Gazdecki*, 255 Mich 518, 520; 238 NW 194 (1931). Indeed, where an injured pedestrian was sufficiently negligent, the Supreme Court has even granted peremptory reversal:

> Assuming arguendo defendant's conduct of taking his eyes off the road to look at his watch while traveling under the posted speed limit was negligent, no reasonable juror could find that defendant was more at fault than the decedent in the accident as required by MCL 500.3135(2)(b). The evidence presented shows that plaintiff was crouching or kneeling in the middle of an unlit rural road in the middle of the night, just beyond the crest of a hill, wearing dark colored clothing at the time he was struck by defendant's automobile. Tests performed by a police accident reconstruction expert revealed that no driver would have enough time to avoid the collision, given the decedent's location just beyond the crest of the hill. There being no genuine issue as to any material fact, defendant is entitled to judgment as a matter of law. [*Huggins v Scripter*, 469 Mich 898, 898-99 (2003).]

We conclude that no reasonable factfinder could conclude that plaintiff was less negligent than defendants in light of the indisputable video evidence. Plaintiff stood on the side of a busy, five-lane highway in Detroit. Seconds earlier, he had scrambled across the roadway, giving Green

---

[5] Indeed, none of them are even responsive to whether Green's conduct falls within the definition of gross negligence in MCL 691.1407(8)(a).

every reason to think he was aware of oncoming traffic. He then positioned himself tight against his vehicle in the parallel parking space, behaving like someone who was aware of the traffic conditions. Yet he inexplicably opened his car door into traffic.

In this, plaintiff acted similarly to the five-year-old decedent in *Braxton*, who "darted from the curb, ran across the street with his head down," and was struck by an automobile. *Braxton*, 255 Mich at 519. The Supreme Court said that "[w]e may hold it was the duty of the driver to notice the boy at the curb without holding that he should have kept watch to see whether he would leave the place of safety." *Id*. at 520. In similar fashion, while Green had a general responsibility to operate the bus in a reasonably safe fashion in light of plaintiff's presence, he was not obliged to anticipate that plaintiff would suddenly swing his car door into traffic—*especially* when plaintiff's prior conduct indicated an awareness of traffic conditions.

Despite this video record, plaintiff attempts to recast the accident as defendants' fault. He argues, for example, that the bus "swerved" toward him and crossed the white line marking the travel lane. But the video flatly refutes any suggestion of a swerve. A strip of black pavement is consistently visible between the bus and the line. And even if there was some de minimis encroachment while the bus approached, at the moment of impact the bus remained in its lane, with black pavement clearly separating it from the line.[6] Plaintiff further contends that the driver should have moved the bus to the left. But the video shows traffic occupying the adjacent lane, and swerving left would have endangered those motorists. Absent a strict liability standard— under which any collision between a motor vehicle and a pedestrian would automatically be the driver's fault—plaintiff cannot establish that defendants were more at fault than he was.

The trial court's contrary conclusion was grounded in its recognition of a jury's role in factfinding. At the hearing, the court remarked that "[g]enerally claims regarding negligence involve questions that must be submitted to a jury as the trier of fact, because they require a subjective analysis of the reasonableness of a person's conduct, . . . and whether there is a causal connection between the conduct and a plaintiff's injuries." As a general proposition, that is true. "[T]he jury decides . . . the specific standard of care: whether defendants' conduct in the particular case is below the general standard of care," an analysis that includes "whether in the particular case the risk of harm created by the defendants' conduct is or is not reasonable." *Moning v Alfono*, 400 Mich 425, 438; 254 NW2d 759 (1977).

But the trial court was too deferential to the factfinder's role. The factfinder decides the specific standard of care "unless the court is of the opinion that all reasonable persons would agree." *Id*. When all reasonable persons would agree, the court is as obligated to grant summary disposition as it is to deny it when a genuine dispute exists. Under MCR 2.116(I)(1), "the court shall render judgment" without delay in two circumstances: "[1] [i]f the pleadings show that a party is entitled to judgment as a matter of law, or [2] if the affidavits or other proofs show that there is no genuine issue of material fact." "[T]he rule *mandates* that if one of two conditions is

---

[6] Indeed, plaintiff cites MCL 257.642(1)(a), which requires that "[a] vehicle must be driven as nearly as practicable entirely within a single lane." But that statute does not impose an absolute obligation. It requires only that a vehicle remain within a lane as nearly as practicable, and it is not violated by de minimis encroachments.

met, then the court 'shall render judgment without delay.' " *Boulton v Fenton Twp*, 272 Mich App 456, 463; 726 NW2d 733 (2006). Most of the caselaw applying this provision has focused on the ability of trial courts to grant relief under it sua sponte. See, e.g., *Hover v Chrysler Corp*, 209 Mich App 314, 317; 530 NW2d 96 (1994). But that is not the sole purpose of the rule; it also establishes that "the trial court is affirmatively required to 'render judgment without delay' when 'the pleadings show that a party is entitled to judgment as a matter of law.' " *Sobiecki v Dep't of Corrections*, 271 Mich App 139, 141; 721 NW2d 229 (2006). While *Sobiecki* was decided on the pleadings, there is no principled reason to distinguish between which "one of [the] two conditions [in the rule] is met." *Boulton*, 272 Mich App at 463.[7]

Here, the "other proofs" defendants submitted—most notably, the multi-angle video recording—demonstrate that no reasonable factfinder could conclude plaintiff was less negligent than defendants. As in *Huggins*, plaintiff's own conduct so plainly exceeded any arguable negligence by defendants that the case cannot proceed to a jury under MCL 500.3135(2)(b). Because the video evidence leaves no room for reasonable dispute, the trial court was required to grant summary disposition at least as to plaintiff's counts I and II.[8] We therefore reverse and remand for further proceedings not inconsistent with this opinion.

/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

---

[7] See also *Asraeel v Farm Bureau Gen Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued October 1, 2019 (Docket No. 344022), pp 3-4 ("Indeed, not only is a court permitted to grant summary disposition in these instances, the word 'shall' in the court rules makes this a *mandatory* action once the court has determined that a party is entitled to judgment and there is no genuine issue of material fact.").

[8] The parties did not specifically brief us on what to make of plaintiff's count III, so we leave it to the trial court to apply our ruling to that claim on remand. Moreover, under MCR 7.203(A)(1), our jurisdiction extends only to the portion of the trial court's order denying governmental immunity to defendants. See MCR 7.202(6)(a)(v). We therefore express no opinion on the City's remaining "mini-tort" counterclaim under MCL 500.3135(3)(e).